[No. 37006.    Department One.    May 21, 1964.]

RICHARD D. TEMBRUELL, *Respondent,* v. THE CITY OF SEATTLE
*et al., Appellants.*\*

*\*Reported in 392 P. (2d) 453.

*A. C. Van Soelen, Arthur T. Lane,* and *Jerry F. King,* for appellants.

*Chavelle, Chavelle & Springer,* for respondent.

HALE, J.—The Seattle police pension board takes a tough-minded view of crimes committed by retired police officers. It stopped Richard D. Tembruell's police pension when it learned that he had engaged in felonious acts. Tembruell says that he was never convicted in the juridical sense for he finally received a deferred sentence, and the information against him was ultimately dismissed.

Tembruell became a member of the Seattle Police Department April 28, 1941. More than 8 years later, July 31, 1949, he retired with a pension for disability received in line of duty. RCW 41.20.060. A charge of grand larceny in knowingly receiving stolen property, filed May 13, 1955, resulted in a jury verdict of guilty November 2, 1955. With the verdict of guilty, the Seattle police pension board, acting pursuant to RCW 41.20.110, *infra,* ordered Tembruell's disability pension paid to his divorced wife, and through her to his minor children as their guardian ad litem.

On June 20, 1957, this court reversed the judgment of conviction (*State v. Tembruell,* 50 Wn. (2d) 456, 312 P. (2d) 809), and ordered a new trial, and the police pension board thereupon restored Tembruell's disability pension payments to him. Tembruell appeared before the superior court 3 months later and entered a plea of guilty to the information. Following entry of plea, the question of punishment remained under advisement—presumably awaiting a presentence report—until February 3, 1958, when Tembruell was granted probation under a deferred sentence.

After reciting that the defendant had entered a plea of guilty to the information charging him with grand larceny, and made application for probation, the order reads:

" 'ORDERED THAT the *imposition of sentence* against the Defendant herein, be, and the same *is hereby suspended and deferred* for a period of three years . . .' " (Italics ours.)

The order placed Tembruell on probation under the supervision of the Board of Prison Terms and Paroles, required compliance with their instructions and regulations, imposed a term of 60 days in the county jail as a further condition of probation, and made him pay all court costs within 60 days of his release from jail. This order directed that, upon completion of the 60-day jail term, Tembruell be released from the custody of the sheriff "to an officer of the Board of Prison Terms and Paroles, to receive his instructions . . ."

The police pension board, having no knowledge of Tembruell's plea of guilty and the granting of probation, continued making the pension payments to him for more than a year. When, in November, 1958, the pension board learned of his plea of guilty, it ordered his payments stopped, deeming his plea of guilty to be a conviction under RCW 41.20-.110, a statute regulating police pensions, which says:

"Whenever any person who shall have received any benefit from said fund shall be convicted of any felony, or shall become an habitual drunkard, or shall fail to report himself for examination for duty as required herein, unless excused by the board, or shall disobey the requirements of said board then such board shall order and direct that such pension or allowance that may have been granted to such person shall immediately cease, and such person shall receive no further pension or allowance or benefit under this chapter, but in lieu thereof the said pension or allowance or benefit may, at the discretion of the board, be paid to those immediately dependent upon him, or to his legally appointed guardian."

Tembruell, following his release from the county jail remained at liberty on probation until June 7, 1961, at which time, upon his petition, the information charging him with grand larceny was ordered dismissed by the superior court. The order of dismissal, after reciting that defendant was of good conduct during probation, decreed that he be allowed to withdraw his plea of guilty and enter a plea of not guilty, and then provided:

"ORDERED, ADJUDGED AND DECREED That the above entitled cause, charging the defendant herein with the crime of

GRAND LARCENY be, and the same is hereby dismissed and the defendant is discharged from further attendance herein and *is released from all penalties and disabilities resulting from the filing of said charge.*" (Italics ours.)

August 31, 1961, Tembruell petitioned the pension board to reinstate his pension retroactive to December 1, 1958. Denial of both reinstatement and any retroactive effect thereof induced Tembruell to bring an action for a declaratory judgment, asserting that a deferred sentence coupled with dismissal of the charge did not constitute conviction of a felony. From a judgment restoring his pension retroactively, the pension board appeals.

■ Before looking into the effect of the plea of guilty upon collateral rights, we ought first inquire into the nature of the rights petitioner acquired under the pension statutes. A pension granted to one in the public service or employment is not a mere gratuity, bonus or expectancy nor simply a promissory commitment to a future obligation. Rather, it is a form of deferred compensation for services rendered and the rights in and to it commence to vest with the first day of employment or service, and continue to vest with each day's service thereafter. *Bakenhus v. Seattle,* 48 Wn. (2d) 695, 296 P. (2d) 536; *Benedict v. Board of Police Pension Fund Com'rs,* 35 Wn. (2d) 465, 214 P. (2d) 171, 27 A.L.R. (2d) 992; *Luellen v. Aberdeen,* 20 Wn. (2d) 594, 148 P. (2d) 849. Pension rights thus vesting from the inception become a property right and may not be divested except for reasons of the most compelling force.

■ Thus the statute (RCW 41.20.110) providing for discontinuance of the pension when the recipient has been *convicted* of any felony must be considered in connection with the rule that the right to the pension is a vested right in the nature of a property; and interpreted so as to avoid working a forfeiture of estate for conviction of a crime. Since neither party brought into question the constitutionality of this statute as working a possible forfeiture of estate for conviction of a crime (Const. Art. 1, § 15), we save that question for another day. In this connection, though, we deem it proper to observe that, where two in-

terpretations of a statute are possible, one valid and the other unconstitutional, the court will give that effect to the questionable language which preserves its constitutionality (*Martin v. Aleinikoff*, 63 Wn. (2d) 842, 389 P. (2d) 422), it being presumed that the legislature intended to act within its constitutional powers. This enables us to narrow our problem to the question: Was respondent *convicted* of a felony within the meaning of the pension statute?

Power to defer the imposition of sentence as was done in this case is accorded the superior court in RCW 9.95.210, in conjunction with the power to grant probation. "The court in granting probation, may suspend the imposing or the execution of the sentence", and we read this language to mean that if *imposition* of sentence has been suspended or deferred, no sentence has been imposed. The uncertainty of meaning arises not in the statute granting power to defer sentence, but in the employment of the word *conviction* elsewhere in the probation statutes. Thus, the beginning sentence of RCW 9.95.200 that "After *conviction* by plea or verdict of guilty" the court may grant probation possibly leaves the impression that the legislature intended mere entry of a guilty plea to constitute a conviction. The employment of similar language in the closing sentence of this section using the words "wherein the defendant *is convicted by plea or verdict of guilty*" may tend to confirm the impression.

Again the process by which the plea of guilty is expunged or expiated by actual dismissal of the information refers to the entry of a plea of guilty as a conviction, and we emphasize the pertinent words to show this. RCW 9.95.240 reads:

"Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, may at any time prior to the expiration of the maximum period of punishment for the offense *for which he has been convicted* be permitted in the discretion of the court to withdraw his plea of guilty and enter a plea of not guilty, or if he has been convicted after a plea of not guilty, the court may in its discretion set aside the

verdict of guilty; and in either case, the court may thereupon dismiss the information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime *of which he has been convicted.* The probationer shall be informed of this right in his probation papers: *Provided,* That in any subsequent prosecution, for any other offense, *such prior conviction* may be pleaded and proved, and shall have the same effect as if probation had not been granted, or the information or indictment dismissed." (Italics ours.)

■ The legislature may give whatever meaning it will to a particular word or expression, and, if we understand the legislature's intentions, the courts will give it the same meaning. Our primary function in the field of statutory interpretation is to ascertain the legislature's intent. In this case, we must keep in mind that the words *convicted* or *conviction* may be intended to convey different meanings in different contexts, and the expression as used in the pension statutes is collateral to its employment in the probation statutes. That the legislature may declare the entry of a plea of guilty to be a conviction to be weighed by the court in fixing punishment in subsequent criminal proceedings does not give it the same status necessarily in collateral inquiries. The very granting of probation under either a deferred or suspended sentence comes as a matter of grace or privilege; it is a form of clemency awarded in the court's discretion to one thought deserving of and who will probably be rehabilitated by it. *State ex rel. Schock v. Barnett,* 42 Wn. (2d) 929, 259 P. (2d) 404; *State v. Farmer,* 39 Wn. (2d) 675, 237 P. (2d) 734; *Escoe v. Zerbst,* 295 U. S. 490, 79 L. Ed. 1566, 55 S. Ct. 818. It being such an act of judicial grace under the statute, the legislature may grant to the court whatever powers it may deem appropriate in imposing conditions. Accordingly, the legislature may designate the entry of a plea of guilty to be regarded by the court as a conviction in the event of later criminal prosecutions without necessarily making the plea to be a conviction for all purposes. The legislature can make of such plea what it will for particular purposes in particular circumstances

without being held to have changed the legal effect of such plea for all purposes.

Whether the entry of a plea of guilty and the granting of probation coupled with a subsequent dismissal of the information shall constitute a conviction in a collateral inquiry depends largely, we think, upon the true nature of the order or decree entered upon the entry of the plea and the final disposition of the cause.

Our civil procedure statutes (RCW 4.56.010) define a judgment as "the final determination of the rights of the parties in the action." In *State v. Siglea,* 196 Wash. 283, 82 P. (2d) 583, we adopted the same definition for criminal cases, with one cogent addition—finality is achieved through actual imposition of sentence following an adjudication of guilty. We said:

"As a prerequisite to an appeal in a criminal case, there must be a final judgment terminating the prosecution of the accused and disposing of all matters submitted to the court for its consideration and determination. *State v. Liliopoulos,* 165 Wash. 197, 5 P. (2d) 319."

We then held that the judgment is not final until sentence has been pronounced.

We made a detailed study of the significance and legal effect of a judgment in criminal cases covering much the same ground as in *Siglea, supra,* in our decision in *State v. King,* 18 Wn. (2d) 747, 140 P. (2d) 283, where, upon entry of a plea of guilty, the court entered a judgment adjudging the defendant to be guilty as charged but imposed no sentence. We held this to be no judgment.

"The judgment of *conviction,* without sentence, in cause number 2962, was simply a judicial establishment of appellant's guilt as ascertained by the verdict of the jury. However, the judgment contained no formal declaration of the legal consequences of his guilt as thus established, but at most constituted simply an order or decree from which it might be inferred that sentence would be imposed later.

"In its technical legal signification 'sentence' is ordinarily synonymous with 'judgment' and denotes the action of a court of criminal jurisdiction formally declaring to the accused the legal consequences of the guilt which he has

confessed or of which he has been convicted. 24 C.J.S. 15, Criminal Law, § 1556. The essential part of the judgment is the punishment and the amount thereof, and until sentence is pronounced there is no final judgment."

As we said in *Siglea*, *supra*, in a criminal case it is the sentence that makes the judgment. Without the sentence there is no judgment.

■ Applying these principles to respondent's career, we see that his plea of guilty to grand larceny, coupled with his award of probation and the subsequent dismissal of the information, do not add up to a conviction of felony within the intendments of the police pension statute (RCW 41.20.110), even though this sequence of events might be specially considered by the court as a prior conviction in a later criminal action. RCW 9.95.240. The entry of a plea of guilty is a formal admission that the defendant committed the acts or allowed the omission charged and that the acts or omissions described constitute a crime. But the entry of a plea of guilty, standing alone, unless specially made so by statute does not constitute a conviction. In many situations not pertinent to this discussion, a plea of guilty may be withdrawn, or vacated, or set aside before judgment, in which case it could not be said to be a conviction.

The plea of guilty does not mature, then, into a conviction until there has been an adjudication of guilt by the court in a juridical sense, that is, until a court of competent jurisdiction has formally pronounced the accused to be guilty, and the judgment does not become final, *i.e.*, a final determination of the rights of the parties in the action, until sentence has been passed in and as a part of the judgment.

The imposition of sentence in the judgment of guilty is the ultimate ingredient, imparting finality to the judgment so as to make the judgment and sentence appealable.

In respondent's case, there being neither an adjudication of guilt nor a sentence, we find that respondent was not

*convicted* of any felony within the meaning of that phrase in the police pension statute, RCW 41.20.110.

The judgment of the trial court is, therefore, in all respects, affirmed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.

July 13, 1964. Petition for rehearing denied.